## JAMES KELLY

*v.*

## PHEBE M. DUNNING.

1. A natural watercourse may be created by the flow of surface water.

2. A land-owner has no right to cause the natural discharge of surface water, from his land on that of his neighbor, to be changed, to the injury of the latter, by conducting it by new channels, in unusual quantities, to the land of his neighbor.

On application for injunction heard on bill and affidavits, and answer and affidavits.

*Mr. Charles S. Lighthipe,* for complainant.

*Mr. James W. Field,* for defendant.

VAN FLEET, V. C.

This is an application for an injunction, the prayer of the complainant being that the defendant may be enjoined from permitting what is called in the bill a ditch or watercourse to remain filled up and obstructed, and from further filling up and obstructing the same. The draughtsman of the bill seems to have been in doubt whether the waterway which the complainant desires to have opened is a natural or artificial stream, and for that reason called it a ditch or watercourse; but when he comes to describe it, his description leaves no doubt as to its legal character. In describing it, he says that for a great many years prior to 1867, there had passed over and across his land a certain ditch or watercourse, having its source on lands of one Richard Harrison, at a point about one hundred feet east of his land, and from that point running in a westerly direction over his land and land intervening between his and that of the defendant, and then across the defendant's land to Parrowbrook; and that water had, from time immemorial, been wont to flow

Kelly *v.* Dunning.

and run, and of right should flow and run through said ditch or watercourse, over and across, and from and off his land, to and across the intervening land into Parrow brook.

If this description is true, there can be no doubt that the stream is a natural watercourse, though it has no perennial source, and carries nothing but surface-water. That would seem to be the real character of the stream, for although the bill says it rises, or has its source on lands of Richard Harrison, it does not allege that a spring or any perennial source of supply exists there; and, in addition, it is important to notice that when it comes to describe the complainant's injuries, it does not charge that the defendant has thrown the water of the stream back on the complainant's land, but merely avers that the defendant, by filling up the channel of the stream, has cut off the outlet by which the water, which collects on his land in wet seasons and after heavy rains, has always heretofore been carried off and emptied into Parrow brook. That is the *gravamen* of the complaint. The complainant, in stating his injuries, says that the surface of his land is such as to collect, in wet seasons and after heavy rains, a large quantity of water which has always heretofore been carried to Parrow brook by the ditch or watercourse, but now, in consequence of the obstructions placed therein by the defendant, the water, at such times, remains on his land until absorbed by the earth or evaporated by the sun.

Now, although it has been decided that no right of any kind can be claimed in the mere flow of surface-water, and that damage resulting from its retention, diversion, repulsion or altered transmission, is not the proper subject of judicial redress (*Bowlsby* v. *Speer, 2 Vr. 351; Town of Union ads. Durkes, 9 Vr. 21*), unless it appears that the damage was caused by collecting the water of a large district of country, by artificial means, into one body, and then pouring it in its accumulated volume and force at a single point (*Field* v. *West Orange, 9 Stew. Eq. 118; S. C. on appeal, 10 Stew. Eq. 600*), yet it is also well established that collections of surface-water may, under some circumstances, constitute a natural watercourse and confer upon those through whose lands it flows the same rights they would have in streams fed by a

perennial source. The court of errors and appeals, in *Earl* v. *De Hart, 1 Beas. 280,* adopted Chancellor Williamson's definition of a natural watercourse. The chancellor, in that case, said: " If the face of the country is such as necessarily collects in one body so large a quantity of water, after heavy rains and the melting of large bodies of snow, as to require an outlet to some common reservoir, and if such water is regularly discharged through a well-defined channel, which the force of the water has made for itself, and which is the accustomed channel through which it flows, and has flowed from time immemorial, such channel is an ancient natural watercourse." The chancellor further said: " Whether it is entitled to be called an ancient watercourse, and, as such, legal rights can be acquired and lost in it, does not depend upon the quantity of water it discharges. Many ancient streams which, if dammed off, would inundate a large region of country, are dry for a great portion of the year." This statement shows the legal right claimed by the complainant and also the nature of his injury.

The defendant denies the very foundation of the complainant's case. She denies that a natural watercourse exists on the land of the complainant, or on the lands intervening between the complainant's land and hers, but says that the waterway, which the complainant calls a ditch or watercourse, is a subterranean drain constructed by the complainant and others since 1867, into which they gather the surface-water falling on their lands and beyond, and then pour the whole body thus accumulated on her land at a single point. The truth of this statement is verified by the oaths of two persons who swear that they have been familiar with the lands of the complainant and defendant for the last twenty years. If the defendant's description of the waterway in question is true, it is manifest the complainant has no case. He is the wrong-doer, and not the defendant. A landowner has no right, by means of artificial trenches or otherwise, to cause the natural discharge of surface-water from his land on that of his neighbor to be changed, to the injury of the land of the latter, by conducting it by new channels, in unusual quanti-

:ties, to the land of his neighbor.    *Field* v. *West Orange, 9 Stew. Eq. 118.*

A question somewhat discussed on the argument, namely, whether the defendant's act in filling up the waterway, had not ·deprived the complainant of an easement which he had acquired .in the land of the defendant by adverse user, is not in the case. The bill is not founded on a grant but on a right conferred by nature.

In the present condition of the case, it is clear that the complainant is not entitled to an injunction.