### Isaac L. Davison

*v.*

### George D. Hutchinson.

D. and H. own adjoining lands.   More than twenty years before the act which was the cause for filing this bill, one of the grantors of H. cut a ditch on his land, within twenty-three inches of the division line, for the purpose of carrying from his lands the accumulations of surface water, which ditch he so extended as to cast the water onto the lands of D.'s grantor.   More than twenty years before this bill was filed, D.'s grantor cut and opened a ditch on his land, to and into the said ditch on the lands of H., for the purpose of draining a wet parcel of his land, by means of which more or less water was carried from said wet land into the drain on the land of H.   About seven years before the filing of the bill, the grantor of D. put down a tile drain, sinking it at least two feet deeper than the old ditch.—*Held*, though no agreement to that effect was proved, the presumption is that each party consented to the other cutting said drains and discharging said waters in the manner named.—*Held*, also, that D. was not limited to an open ditch; nor was the use of tiles to conduct the water an abuse of his privilege; but the increase of the volume of water was.

On bill, answer and proofs.

*Mr. A. S. Appelget*, for complainant.

*Mr. S. M. Schanck*, for defendant.

Bird, V. C.

The complainant asks for a mandatory injunction, commanding the defendant to remove obstructions which he placed at the

point where the water, coming from the lands of the complainant, had its exit through tiling under the ground into an open drain on the lands of the defendant. The complainant says that this is an ancient water-course, in which the water has been accustomed to flow for a long time past. Hutchinson denies this, and insists that it is artificial and not ancient.

The parties own adjoining tracts of land; the land of Davison is the higher, with a slight descent towards that of Hutchinson. Davison's land lies to the south and west of Hutchinson's. A small portion of Davison's lands is wet and marshy, in which so· much water is constantly springing as to prevent the successful growth of grain or grass, unless the water be carried off by drains. The truth is, the testimony shows that there is no natural water-course to carry off this .water. Although there is a slight descent from the lands of Davison to those of Hutchinson, yet not enough for this water ever to have created a channel for itself. By percolation a portion of these waters reached the lands of Hutchinson.

Surface waters so collected on the lands of Hutchinson as to become very burdensome. To control these a former owner, many years since, made an open ditch on the south side of the· Hutchinson tract, and so near to the line of the Davison tract,. that the upper line of the cut was within twenty-three inches of Davison's line. This ditch was opened to the westward until it reached the lands of Davison, and thence onto his lands a considerable distance. By whom it was opened onto Davison's· lands does not appear; but the evidence satisfies me that it has been so opened a long while, if not as long as the one on Hutchinson's. For all the time since the opening of that ditch, a great deal of surface water has been carried by it from the lands of Hutchinson onto the lands of Davison. Near by the place where these waters are so discharged on the lands of Davison, he has constructed a watering place for his cattle, and has used it ·for that purpose for several years.

More than thirty years ago the then owner of the Davison land cut an open drain on his land so as to drain the portion, so wet and marshy, as aforesaid. This drain was about two feet

deep, and led into the drain on the land now owned by Hutchinson. By what authority this drain was opened on the lands now owned by Hutchinson does not appear, neither does it appear by what authority the drain on Hutchinson's lands was extended onto the lands of Davison. I think I am doing no violence to the well-established rules of evidence in presuming that both of these ditches were opened on the servient estate, with the knowledge or consent of the owner. And I think the presumption is equally strong that all of the waters which were collected in the ditch on the lands of Davison were discharged into the ditch on the lands of Hutchinson, and that this was continued for a great many years. Three circumstances support this view very strongly : (1) the fact that the owner of the Hutchinson land cut the drain on his land so near to the line of the Davison land as to aid somewhat in draining the Davison lands and then continuing his drain onto the Davison lands; (2) a great deal of this water so springing on the lands of Davison, naturally has found its way, by percolation and otherwise, to the drain on the lands of Hutchinson, in case no surface drain had been opened for that purpose.; and (3) the fact that a surface drain was also opened on the lands of Davison, leading these waters from this wet ground into the ditch on the lands of Hutchinson, which no doubt very greatly increased the flow of water from the land of Davison onto that of Hutchinson. Now, when these things are considered, and especially that the former owner of the Hutchinson land was permitted to discharge all the surplus water which collected on his land onto the Davison land, it is most reasonable to presume that the owner of the Davison estate was to have the right to discharge the water arising on this wet place, on his land, into the drain on the Davison land. And, after this lapse of time, it is fair to presume that the place where the drain was so opened on the Davison lands was the place where the parties were willing it should be opened.

I can have no doubt but that the owner of the Davison land acquired the right to drain this wet parcel of land by means of that drain so cut, or by something equivalent thereto, into the drain on the Hutchinson lands. The Hutchinson estate ought to

bear the burden to that extent. Certainly the owner of the Davi-
son estate cannot materially increase the burden. "Privilege
claimed in derogation of another's rights is viewed with jealousy
by the law, and must be strictly confined within prescribed
limits." *Taylor* v. *Hampton, 4 McCord 96 (17 Am. Dec. 710)*.

Having found that the right to drain these lands, by these
artificial means, has been acquired, in the manner mentioned, it
remains to be determined whether Davison has, under the rule
above stated, kept within the privilege, or right, so acquired, or
whether he has materially increased the burden on the servient
estate. The evidence leads me to the conclusion that he has
greatly increased the burden, by sinking the tile through which
he carries the water to so great a depth, as he appears to have
done. I do not mean to say that Davison had not the right to
substitute an underground drain for a surface or open one. I
have no doubt but he had such right. The fact that the water-
way or drain is covered, cannot possibly alter the right. What
I find is, that Davison has altered the location of the drain, but
that only by sinking the tiles used from two to three feet deeper
than the old open drain was, and in that way increased the
volume of water. The result of this change, in the depth of the
drain, is to produce from two to four gallons of water per minute
at the point of exit, in the ditch on the lands of Hutchinson,
whereas, in fact, before the tiles were so sunken, the drain on
Hutchinson at that point was often dry. Indeed, as I have
above stated, this bill is filed and the injunction asked for on the
ground that the flow of the water is constant, so that it comes
within the law relating to running streams. But the evidence
shows that the water-course in question is only an artificial one.
Most clearly, however, such a water-course may become so
ancient, or, as in this case, be based on such strong presumptions
of an agreement, or such mutual acts of the parties interested, on
account of which both are estopped, as to bring it within the
operation of the law concerning ancient water-courses. And as
I have found, I think, that the water-course first opened on the
lands of Davison is such an one, and had the tiles which were
laid on the lands of Davison been placed no further beneath the

surface than the bottom of the old open drain on his lands, such tiles would have been there of right. But because the said tiles have been sunken considerably deeper, I think that the complainant has gone beyond his privilege. The old drain was not over three feet in depth, but the man who laid the tiles swore that the trench for them was cut from five to six feet deep.

The complainant's counsel claims that this case is like *Earl* v. *De Hart, 1 Beas. 280,* in which the court of errors held, "Where A has drained his land by a ditch through the land of B, using it as an adverse right for more than twenty years, he acquires an easement in the land of B which is entitled to protection." The facts in the two cases are not similar. The waters in the one case were all surface waters, while in this they are sub-surface. In the one case the right originated in an adverse user; in this, as I have found, in an agreement entered into by the owners of the two estates, which having been acted on by them works a mutual estoppel. In both cases, the right to the easement is established. In this case, the question, in my mind, is not whether there is an easement or not, but whether the complainant has sought to enlarge the right which he possessed or not.

I have reserved till now the quotation of what the counsel of the defendant regards as fundamental law, and as in direct conflict with the views above expressed respecting the right of the complainant to carry this water under, as well as on, the surface. His insistment is: "Each proprietor may insist that the stream shall flow to his land, in the usual quantity, at its natural place and height, and that it shall flow off his land to his neighbor below its accustomed place and at its usual level;" referring to *Gould on Waters,* § *204.* While this law, which I think no one will question, is not at all in conflict with the rights which I have adjudged to belong to the complainant, it most fully supports the principle which has been my guide, in concluding Davison cannot increase the volume of water by sinking his drain deeper than it was originally. Nor do I find anything in *Shields* v. *Arndt, 3 Gr. Ch. 234,* nor in *Holman* v. *Boiling Spring Co., 1 McCart. 335,* which militates against either of the points which I have decided. I think the bill should be dismissed, and the injunction heretofore granted be dissolved, with costs.