## Township of Southampton

*v.*

### Allen J. Scott.

[Decided May 17th, 1920.]

1. Where the proofs show that a landowner had filled in a ditch which was part of an adjacent public road, and had also taken down fences on the public road, and had cultivated and raised crops on the soil thereof, thereby interfering with the flow of drainage water along the road, and thereby rendering travel along the road difficult and at times dangerous, the landowner will be enjoined on final hearing from committing such public nuisance, at the suit of the township which is responsible for the maintenance of the road, even though the township may have a remedy at law against the defendant.

2. Although equity ordinarily has interfered only with reluctance to restrain a public nuisance for which an indictment would lie, nevertheless the creation and maintenance in a public highway of conditions producing actual danger of injury to person or property of travelers, is a public injury which will be restrained.

3. The power of a court of equity to restrain a public nuisance which is also a misdemeanor is undoubted; and the tendency is toward the exercise of that power more frequently than in former days.

On pleadings and proofs. On final hearing.

*Mr. Robert Peacock,* for the complainant.

*Mr. George M. Hillman,* for the defendant.

Buchanan, V. C.

The bill is filed by the township of Southampton to restrain the defendant from maintaining a public nuisance or nuisances in two public roads, known as the "Ayrestown Road" and the "Purgatory Road." Both roads are admittedly under the jurisdiction and control of the township.

There was little if any dispute as to the commission by de-

fendant of the acts of which he was accused; the greater part thereof being indeed expressly admitted by defendant in his testimony. At any rate I am entirely satisfied from the evidence that a ditch or gutter was constructed on the easterly side of the "Purgatory Road" at its junction with the "Ayrestown Road," when the "Purgatory Road" was first opened and constructed, some thirty-five or forty years ago. This ditch or gutter was for the purpose of draining not merely the "Purgatory Road," but also the "Ayrestown Road," and it did fulfill that purpose. Naturally the action of the elements in the course of time tended to fill up this ditch—and there was some evidence tending to show that it was cleaned out by the township on at least one occasion a number of years ago. Some years later defendant removed the fence dividing the road from his adjoining field and thereafter so ploughed and cultivated that field as to fill up the ditch. A year or two ago the township dug it out, and defendant immediately filled it up again, and this was repeated several times. His excuse was that he wanted to be able to enter and leave his field from any point in that highway, and that the ditch had been dug out too deep to permit of this; also that he wanted to cultivate his field right up to the highway line and for this purpose to drive his horses, while ploughing and cultivating, out into the highway.

On the Ayrestown road he likewise took down the fence dividing his field from that highway, and has since continuously cultivated and grown crops along the highway for a distance of some seven or eight feet out into the highway beyond the line of the farm fence (which had existed for thirty or thirty-five years). This appropriation of the highway for agricultural purposes obliterated the gutter or ditch on the south side of the Ayrestown road. His excuse for this was that it did no harm since there was no encroachment on the improved portion of the road, and that the growing crops looked better than the weedy ditch. He also has constructed a driveway or approach to his farm house, filling in from the improved portion of the roadway, and thus making a dam across the gutter or ditch along the south side of the Ayrestown road, and interfering with the flow of drainage water along the same.

The results of these acts has been to interfere with the drainage of the roads, and at times to cause the sides of the roads to be overflowed, and on one or two occasions the water covered the crown of the Ayrestown road. In severe cold weather such as was experienced in the past winter, this water froze and travel was thereby rendered dangerous, notwithstanding a clear roadway sufficiently wide for one team was left.

That the acts complained of constitute a public nuisance is obvious, and defendant admits that they have been done by him in portions of the lands which he admits are within the confines of these public highways.

He contends that the nuisance resulting is merely theoretical and not actual—*injuria absque damnum*—and therefore no cognizance should be taken thereof by this court; and further contends that under the authorities, no decree for restraint should be made by this court inasmuch as the township has other remedies, such as by indictment, ejectment, and actions at law for damages, and should be remitted thereto.

With the first contention I cannot agree. The roads are for the use of the entire public, not merely residents of Southampton township, who may be familiar with the conditions and so able to avoid danger. There is actual damage to the public when it is excluded from portions of the public highway, and when the highway is put in such condition as to create dangers in travel on and over it, even if those dangers arise only infrequently. The creation of the dangerous condition is sufficient; it is not necessary to wait until some travelers have actually sustained damage to person or property therefrom.

As to the second contention, the jurisdiction of this court to restrain a public nuisance at the suit of a township or other public authority is well settled, and is not disputed. *Greenwich Township* v. *Easton and Amboy Railroad Co., 24 N. J. Eq. 217; affirmed, 25 N. J. Eq. 565.*

In support of the second contention, counsel for defendant cites *Attorney-General* v. *New Jersey Railroad and Transportation Co., 3 N. J. Eq. 136; Attorney-General* v. *Heishon, 18 N. J. Eq. 410; Attorney-General* v. *Brown, 24 N. J. Eq. 89; At-*

*torney-General* v. *Delaware and Bound Brook Railroad Co., 27 N. J. Eq. 1; Inhabitants of Woodbridge* v. *Inslee, 37 N. J. Eq. 397; Raritan Township* v. *Port Reading Railroad Co., 49 N. J. Eq. 11; Morris and Essex Railroad Co.* v. *Prudden, 20 N. J. Eq. 530; Grey, Attorney-General,* v. *Greenville and Hudson Railway Co., 59 N. J. Eq. 372,* and *Attorney-General* v. *Hudson County Water Co., 76 N. J. Eq. 543.*

It would serve no good purpose, I apprehend, to review these cases in detail. Suffice it to say that a careful examination of them and of numerous others shows that this court is by no means bound on precedent or authority to withhold the exercise of its restraining arm under the circumstances of the case *sub judice.* In every case where restraint was denied there will be found to have existed one or more of the following circumstances, namely, the application being for a *preliminary* restraint; the legal rights of the parties being in dispute; the completion of the construction alleged to constitute the nuisance; delay or acquiescence by the public while the work was being constructed. I have been able to find no instance of denial of restraint upon final hearing for the sole reason that the remedy at law was adequate.

It is true that in *Township of Raritan* v. *Port Reading Railroad Co.* it is said that "Where the grievance is a misdemeanor, subject to indictment, equity will interfere with great reluctance, even though its intervention be sought by the attorney-general, and then only to prevent a very serious public injury," citing some of the cases urged by the present defendant. It may be pointed out that the actual decisions in the cases cited scarcely support the doctrine enunciated (*Cf. Attorney-General* v. *Hudson River Railroad Co., 9 N. J. Eq. 526,* at *p. 560*) ; that the application was for a preliminary injunction; and that the facts as found by the court showed but trifling (if any) inconvenience, and no danger of actual damage, to the public.

The language in the *Raritan Township Case* is cited or quoted in *Grey* v. *Greenville and Hudson Railway Co., supra,* and *Attorney-General* v. *Hudson Water Co., supra,* but with the significant omission of the word "very" before "serious public in-

jury;" and in the *Greenville and Hudson Railway Co. Case,* attention is called to "the clear tendency of the courts to increase rather than diminish the remedies necessary for the complete protection of the public interest in highways."

At all events, I am of the opinion, as already indicated, that the injury to the public shown by the evidence in this case to be the creation, even though infrequently, of conditions which might well result in actual injury to person or property of the traveling public, is a sufficiently "serious public injury" to warrant the intervention of this court. The case has been fully tried, and at considerable length; the unwarranted intrusion by defendant upon the highway is clear and admitted; the acts of the defendant, or some of them have been repeated again and again. The observations of Vice-Chancellor Pitney in *Hennessy* v. *Carmony, 50 N. J. Eq. 616* (at *p. 623*), in dealing with a similar argument by defendant, seem to me equally appropriate to the case at bar. The remedy by indictment may be theoretically adequate, but in practical experience its adequacy is frequently not so apparent. Public authorities and grand juries are but human, and in many instances are reluctant to resort to such drastic measures as the indictment of a friend or neighbor. And surely upon any other theory the public is as well entitled as an individual to the aid of equity.

A decree will be advised, therefore, restraining defendant from continuing the public nuisances in question, within the admitted lines of the highways.