This is a bill for injunction restraining the town of Bloomfield from trespassing on the lands of complainants in the matter of a ditch running through their property and to compel the town to refill the ditch.
The case was heard before me several months ago, and I then said that as soon as the briefs of counsel were submitted I would render a prompt decision. I have this day (August 10th) received the briefs. I make this preliminary statement in order to show that whatever delay there may have been is not in any way attributable to the court. *Page 463 
The property in question is owned by the complainant Vincent F. Kearns, and is known as 31 Washington Place, Bloomfield. It faces on Washington Place and slopes down to a natural gully at the rear. Complainants purchased it on May 28th, 1918. The gully was in existence at that time. Thereafter, as complainants admit, the gully was filled in by them — forty or fifty loads of earth being dumped there. This caused the water, which naturally flowed through the gully, to rise and spread over surrounding streets and property. The town of Bloomfield sought to re-establish the flow through the gully, but was halted by preliminary injunction. The question now before this court is whether the preliminary injunction shall be continued or whether the town shall be allowed to proceed to keep the water channel clear in order that undue flooding of surrounding property may be avoided.
I personally inspected the property in question, and listened to a great deal of testimony as to whether or not this gully was in reality a water-course. Without going into the testimony in detail, I am convinced that it has been in existence for a great many years — certainly over twenty years.
That being so, has the municipality the right to keep it open in order to preserve the flow of the water in its ordinary course and to prevent injury to the surrounding property. It should be remembered that the checking of the flow of water through this gully was primarily caused by the filling in by complainant, and no complaint was made by him in the matter until the institution of this suit, although he purchased the property in 1918.
In the case of Southampton Township v. Scott, 91 N.J. Eq. 443,
defendant filled up a ditch adjacent to his property; the township cleaned it out several times and finally brought an action in chancery to restrain defendant from again filling it in. Vice-Chancellor Buchanan held: "The jurisdiction of this court to restrain a public nuisance at the suit of a township or other public authority is well settled." The learned vice-chancellor further said: "The result of these acts [filling in a ditch] has been to interfere with the draining of the roads and at times to cause the sides of the roads to be overflowed, and on one or two occasions the water covered *Page 464 
the crown of Ayrestown road * * * that the acts complained of constitute a nuisance is obvious." This case is very similar to the one at bar, except that the ditch in the above-cited case was along the edge of the road and not across defendants' land. However, this gully has been in existence for many years and the municipality has on many occasions, without protest, cleaned it out to prevent flooding of the adjacent highways.
The governing body of a municipality has the right, in order to save property, to enter upon and make use of private property for the public good.
In the case of State v. Wilson, 107 N.C. 865, the court says, in effect, whatever remedies the landowner may have against a municipality for flooding his land without acquiring any right or permission to do so, he cannot himself abate the injury by obstructing the flow of drainage so as to create a nuisance in the street, and if he does so he will be liable under an ordinance prohibiting any person from obstructing the flow of water through or from the streets.
Moreover, the draining of adjacent lands across complainants lands through a well-defined channel for more than twenty years constitutes an easement.
In the case of Earl et al. v. De Hart, 12 N.J. Eq. 280, the court said:
"If the surface of the grounds is such as to collect water at different seasons of the year, to an extent which requires an outlet to some common reservoir, and if such is always the case in times of heavy rain and melting snow; and if, as far as the memory of man runs, that flow of water produced a natural channel through the lands of different persons, which such accumulated surplus water has always been accustomed to run, a court of equity will protect such channel from obstruction, to the injury of anyone through whose land it runs.
"The question, whether an outlet for water is an ancient water-course, does not depend upon the quantity of water it discharges. If the face of the country is such as necessarily collects in one body so large a quantity of water, after heavy rains or melting of snows, as to require an outlet to some *Page 465 
common reservoir, and if such water is regularly discharged, a well-defined channel, which the force of the water has made for itself and which is the accustomed channel through which it flows, and has flowed from time immemorial, such channel is a natural water-course.
"Where A has drained his land by a ditch through the land of B, using it as an adverse right for more than twenty years, he acquires an easement in the land of B which is entitled to protection."
The chancellor, in deciding the case, said in part:
"An injunction is prayed against the said defendants, to enjoin and restrain them from permitting the channel of the said water-course to remain filled up and obstructed in the manner the same has been filled up and obstructed by the defendants, as is stated in the said bill, and from further filling up and obstructing the same." Again, the chancellor further says: "The testimony of all the witnesses on all these material points, the necessity of an outlet for the water — that this is its natural flow — that it is a channel well defined, and that it is an ancient channel, is uniform."
The chancellor, in deciding the case cited, says: "There is another question, and that is as to the extent of the injunction. When the bill was filed the channel for the discharge of the water was stopped up, and it would appear, from the evidence, that it remains so still. The prayer of the bill is, that the defendants may be decreed to abate and remove the obstruction, and that they may be enjoined from permitting the channel of the said water-course to remain filled up and obstructed in the manner the same has been filled up and obstructed, as complained of in the bill.
"The complainant is entitled to have the obstruction removed. There is no reason why the court should not exercise a power to abate as well as prevent the erection of nuisances in clear cases * * *. Let a decree be entered in accordance with these rules."
In the case of Schnitzius v. Bailey, 48 N.J. Eq. 409, the court said: "Where water, whether coming from springs or rains or melting snows, has flowed over lands of the complainant *Page 466 
in a well-defined channel for a period of time so long that the memory of man runneth not to the contrary, to and upon lands of an adjoining proprietor, the court will, by its mandatory injunction, require such adjoining proprietor, to remove any obstruction placed upon his land to prevent such water from flowing to and over his lands.
"In such case it can make no difference whether such channel be natural or artificial. If the complainant, in order to improve his lands for agricultural or trade purposes, alter such channel upon his land or increases the volume or velocity of the water, the adjoining proprietor has no cause of complaint unless he can show that he has sustained material damage thereby."
I therefore find that this gully was an outlet for water for many years; that the complainant himself filled it in and prevented the natural flow; that his action has been delayed since 1918. Consequently, the town of Bloomfield has in my opinion a perfect right to keep open the old water-course and thus prevent the flooding of adjacent property and the creation of a public nuisance.
I will accordingly advise a decree vacating the preliminary injunction against the town of Bloomfield and granting an injunction against complainant, restraining him from interfering with the town authorities in clearing out the water-course.