LLOYD M. GRANGER AND MARJORIE S. GRANGER, HIS WIFE, PLAINTIFFS, v. ELM TREE VILLAGE, INC., A CORPORATION, AND FATZLER CO., INC., A CORPORATION, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided December 16, 1952.

*Mr. Barney Larkey* (*Mr. Adrian M. Unger* appearing), attorney for plaintiffs.

*Mr. John J. Clancy*, attorney for defendants.

SPEAKMAN, J. C. C. (temporarily assigned). Plaintiffs, the owners of premises at 668 Park Avenue, East Orange, seek to restrain defendant corporations, the owner and contractor who built a garden type housing project on the adjoining property, hereafter referred to as the Elm property, from causing water to gather and flow upon a particular portion of plaintiffs' premises, and for the recovery of compensatory and punitive damages.

Plaintiffs' property is bordered on the south by Park Avenue, on the west and north by the defendants' property, and by other neighbors to the east. Prior to the erection of the buildings on the Elm property the topography was such that surface water running from the plaintiffs' property and from the property of their neighbors to the east and south, flowed toward and on the Elm property; there was a difference of 12 feet in the grade from the plaintiffs' property at its highest point to the Elm property at its lowest point. The plaintiffs' property slopes downward in a northwesterly direction about seven feet from Park Avenue to the northwest corner of plaintiffs' property. In the course of construction the defendants raised the level of their property along the westerly and northerly boundaries of plaintiffs' property approximately three feet above the plaintiffs' property. Defendants built a concrete retaining wall two feet within their property line which borders plaintiffs' property on the north, and constructed an elevated embankment and private road which borders plaintiffs' land on the west. To the north of plaintiffs' property on an extension

of the line forming the east border of plaintiffs' land defendants have built, at an artificial elevation, a line of garages.

As a result of this construction plaintiffs say that the natural flow of surface waters was radically changed and that large quantities of surface waters from adjoining properties to the east which normally flowed direct to the Elm property are now diverted and caused to flow over and accumulate in the northwest corner of plaintiffs' property; that large quantities of water which formerly flowed from the east and south over plaintiffs' property and thence onto the Elm property are dammed up by the embankment and concrete wall; and that some water falling on the easterly slope of the embankment near plaintiffs' westerly line is cast on their property.

This is borne out by the evidence which demonstrates that when there is a heavy rain a body of water, sometimes 100 feet in diameter and on some occasions larger, forms on plaintiffs' property and on land to the east. This water remains for a period of from one day to a week and in the winter sometimes forms an ice area and in the summer a small pool. Plaintiffs claim that their lawn and garden crops have been damaged and the value of their property lessened. An examination of the land during the dry period this fall revealed a generally soft condition of the back lawn (the north end of plaintiffs' property), and a later inspection of the property following heavy rains disclosed the accumulation of a small body of water in the rear northwest corner of the property.

Conceding that the so-called common enemy rule is the law of New Jersey, see *Niestal v. Equitable Security Co.*, 6 *N. J. Super.* 148, 153 (*App. Div.* 1950); see also, 56 *Am. Jur.* 552, plaintiffs contend that they are entitled to relief under one or more of the exceptions thereto.

First, they assert that defendants have collected and conducted surface waters in new channels in unusual quantities to or on a particular part of the land of the plaintiffs

as alleged in the case of *West Orange v. Field*, 37 *N. J. Eq.* 600 (*E. & A.* 1883). This is not supported by the evidence. To argue that because the wall along the northern end of the plaintiffs' property is two feet within the defendants' property line, and that therefore waters are collected upon and discharged from the land of the defendants upon that of plaintiffs, is to torture the principle of the *Field* case. Whether the wall is on the line or two feet within the line the effect of the wall is to repel the waters and that, under the laws of New Jersey, is within the authority of every landowner. *Bowlsby v. Speer*, 31 *N. J. L.* 351, 352 (*Sup. Ct.* 1865); *Zamelli v. Trost*, 132 *N. J. L.* 388 (*Sup. Ct.* 1945), affirmed *per curiam* 133 *N. J. L.* 465 (*E. & A.* 1945); *McCullough v. Hartpence*, 141 *N. J. Eq.* 499, 501 (*Ch.* 1948); *Niestat v. Equitable Security Co.*, 6 *N. J. Super.* 148, 153 (*App. Div.* 1950).

█ Plaintiffs next argue that due to the contours of the land there was a natural water-course or drainway which defendants cannot obstruct. *Earl v. De Hart*, 12 *N. J. Eq.* 280 (*E. & A.* 1856); *Ross v. Mackeney*, 46 *N. J. Eq.* 140 (*Ch.* 1889).

In the *Earl* case the court said an ancient water-course does not depend on the quantity of water it discharges but that:

"* * * If the face of the country is such as necessarily collects in one body so large a quantity of water, after heavy rains and the melting of large bodies of snow, as to require an outlet to some common reservoir, and if such water is regularly discharged through a well-defined channel, which the force of the water has made for itself, and which is the accustomed channel through which it flows, and has flowed from time immemorial, such channel is an ancient natural water-course."

In the *Ross* case Vice-Chancellor Bird held that the absence of any defined channel or cut in the soil was not fatal to the plaintiffs' case when the defendant sought to prevent the obstruction of an alleged water-course, for he found that by the placing of bricks,

"* * * the surface of her lot has been protected by such means as to preserve the lot, and prevent the waters from carrying away the soil, and thereby opening, and continuing open, a channel; and especially so since the water has always crossed the dividing line at precisely the same place, and most especially since whether the water flows over the bricks or the naked soil without a channel, or with one whether two or ten inches deep, has imposed no additional burdens upon the defendant's lot."

The evidence here does not establish that on the plaintiffs' land there ever existed a water-course as this term has been given meaning under the *Earl* and *Ross* cases *supra*. On the contrary, it conclusively demonstrates that during the years of their occupancy waters on plaintiffs' property did not flow in any regular or defined channel. In their supplemental memorandum plaintiffs offer proof to establish that there was a water-course on the defendants' land. No useful purpose would be served by reopening the case for the introduction of such proofs inasmuch as the offer does not tend to establish the existence of a water-course on their land. It would only show that surface water which naturally flowed from their land to the defendants' land found its way into a water-course once known as Naylor's Brook. Although in the *Ross* case, *supra*, the situation seemed to approximate the line dividing surface waters from a water-course the distinction still exists. The evidence shows clearly that the water involved here was surface water and was not, at any point on the plaintiffs' land, a water-course.

 Plaintiffs further contend that the offensive condition created on their property by defendants' action constitutes a nuisance which equity will abate. The fallacy in this argument is the assumption that the water is a nuisance. To render a person liable for creating a nuisance, there must be some breach of duty on his part. *Monaco v. Comfort Bus Line, Inc.*, 134 *N. J. L.* 553 (*E. & A.* 1946), at *p.* 559. Since the defendants violated no right in the plaintiffs and committed no willful or malicious wrong to plaintiffs' property, but on the contrary have made a reasonable use of the Elm property, their actions did not create a nuisance.

Finally, plaintiffs suggest that the law of surface waters is fluid, see *Lulevitch v. Roberts*, 98 *N. J. Eq.* 373 (*E. & A.* 1925), and that if they do not come within one of the recognized exceptions to the common enemy rule, that this court engraft a new exception on the rule or invoke the modified common enemy rule, adopted by so many of our sister states, see 56 *Am. Jur.* 553, which requires that "one must so use his property as not unnecessarily to injure others."

If a choice between the two rules were now open, cogent arguments would be available that the modified common enemy rule rather than the common enemy rule—which appears to have been expanded from the form in which we received it from the mother country, *Lulevitch v. Roberts, supra; cf. Taylor v. Fickas,* 64 *Ind.* 167 (*Sup. Ct.* 1878); see also, 56 *Am. Jur.* 553; 67 *C. J.* 867, *n.* 61 (*a*); 3 *Farnum, Waters and Water Rights* (1st ed. 1904), 2587—more appropriately fits the needs of present day society which has produced technological developments capable of preventing, at reasonable cost, accumulations of surface waters resulting from the erection of large industrial plants and multiple housing units in rural and suburban areas. It is sufficient, however, to point out that our highest court has not adopted the modified common enemy rule and it is not the function of this court to do so.

Judgment in favor of the defendants may be entered in conformity with this opinion.