33 N.J. Super. 519 (1955)
111 A.2d 69
JOSEPH WILSON HUGHES AND MILDRED HUGHES, PLAINTIFFS-APPELLANTS,
v.
ABEL KNIGHT AND FLORENCE E. KNIGHT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1954.
Decided January 4, 1955.
*521 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Louis B. LeDuc argued the cause for appellants (Mr. Vernon H. Fisler, Jr., attorney).
Mr. Guy Lee, Jr., argued the cause for respondents.
The opinion of the court was delivered by JAYNE, J.A.D.
The testimony in this action tells about the characteristics of a ditch through which surface waters stray across the lands of the parties situate in the farming country of southern Gloucester County. It may be immediately stated that we do not discover in the record before us any justifiable reason to depart from the basic factual conclusions of the trial judge, who also availed himself of the opportunity personally to inspect the locus in quo.
The transcription of the testimony achieves the dimensions of a sizeable volume and therefore our statement of the significant circumstances and controversial issues here is abbreviated and distinctly general.
The farms of the plaintiffs and defendants are adjacent. The ditch carries the surface drainage waters in a generally west by north direction from the farm of the plaintiffs to that of the defendants and thence flows beyond. The plaintiffs deemed its capacity to be inadequate, and in 1948 they not only deepened it or otherwise enlarged it on their land, but they also entered upon the defendants' land and there also increased its width or depth.
The defendants resolved to resist the consequential augmented flow of the waters upon their property and erected at least two dams on their land, the last of which so effectively arrested the passage of the water that it was thereby, it is said, caused to accumulate to an injurious amount on the land of the plaintiffs.
*522 The plaintiffs instituted the present action to enjoin the maintenance of the dam by the defendants. The defendants attributed the involvement to the alleged wrongful acts of the plaintiffs in enlarging the ditch. Both plaintiffs and defendants also demanded compensatory damages from the other for the alleged resultant injury to the respective lands.
In further explanation of the case, it is expedient to quote certain factual conclusions of the trial judge:
"Considering all the evidence, the possible interest of some of the witnesses, the manner of their testifying and the quality of their testimony, I must reach the conclusion that the plaintiffs have carried the burden of establishing, by a clear preponderance of the proof, that a drainage ditch has existed for more than 40 years, running from the Knisell farm across the Mead farm, through the woodland and onto the Knight premises, and continuing across the woodland road to a small swamp. The hand of some owner beyond the memory of man may have cut part of the channel, with nature providing the rest by way of shallow depressions and gulleys."
Illuminative also is another observation of the talented trial judge:
"Plaintiffs having, as noted, gone onto the Knight property without permission to deepen and widen the ditch, with the resultant cutting of defendants' woodland road and the flooding of their lands, they do not come into a court of equity with clean hands. They are not entitled to the injunction they seek. Defendants, on the other hand, are not obliged to receive upon their premises the swifter and larger flow of water resulting from plaintiffs' improvement of the ditch. There will be an injunction in defendants' favor restraining plaintiffs from draining surface waters, or any other kind of waters, into the ditch in a volume exceeding that which existed before the ditch was deepened and widened in 1948."
Accuracy recommends the quotation of the terms of the final judgment:
"It is on this 21st day of May, 1954, ordered and adjudged that the demands of the plaintiffs for an injunction and the right to enter the property of the defendants for the purpose of repairing and cleaning the ditch as set forth in the complaint and for damages is denied; and that the said plaintiffs, Joseph Wilson Hughes and Mildred Hughes and their agents, servants and employees, and each and every one of them, be and they are hereby enjoined and *523 commanded henceforth and forever to desist and refrain from draining a greater volume of water into the said ditch than existed prior to the year 1948; that the said plaintiffs, Joseph Wilson Hughes and Mildred Hughes, be and they are hereby enjoined and commanded forthwith to return the ditch to its dimensions existing prior to the year 1948 by filling in the same; and the demand for damages of the defendants against the plaintiffs is denied."
In some material and substantial respects we are constrained to disagree with the adjudication. Reference is necessary to the principles of law and equity which we believe are applicable or cognate to the factual circumstances deemed to have been established.
In the consideration of the rights and inhibitions of owners through or upon whose lands exists a well-defined channel, whether natural or artificial in origin, for the drainage of surface waters, we commonly consult in our jurisdiction the decisions in Earl v. De Hart, 12 N.J. Eq. 280 (E. & A. 1856); Carlisle v. Cooper, 21 N.J. Eq. 576 (E. & A. 1870); Kelly v. Dunning, 39 N.J. Eq. 482 (Ch. 1885); Davison v. Hutchinson, 44 N.J. Eq. 474 (Ch. 1888); Ross v. Mackeney, 46 N.J. Eq. 140 (Ch. 1889); Schnitzius v. Bailey, 48 N.J. Eq. 409 (Ch. 1891), affirmed 53 N.J. Eq. 235 (E. & A. 1895); Banks v. Simpkins, 88 N.J. Eq. 1 (Ch. 1917); Kearns v. Town of Bloomfield, 101 N.J. Eq. 462 (Ch. 1927); Smith v. Orben, 119 N.J. Eq. 291 (Ch. 1935); Mancini v. DeLillis, 1 N.J. Super. 490 (Ch. Div. 1948); Granger v. Elm Tree Village, Inc., 23 N.J. Super. 592 (Ch. Div. 1952). In consequence of the pertinent factual determination of the existence of a defined watercourse, we are not here concerned with the "common enemy" doctrine. Vide, Bowlsby v. Speer, 31 N.J.L. 351 (Sup. Ct. 1865).
We shall assume from the findings of fact that the channel was created probably by the cooperating forces of nature and the exertions of man more than 40 years ago. There has therefore been created a right acquired by the plaintiffs and an obligation imposed upon the defendants and both by reason of the prescriptive easement. Earl v. *524 De Hart, supra; Ross v. Mackeney, supra; Mancini v. DeLillis, supra. The plaintiffs are the owners of the dominant tenement to whom the right belongs; the defendants are the owners of the servient tenement upon whom the obligation to respect the right devolves. True, neither the right nor the obligation is infinite and limitless, but assuredly both must run abreast of the easement.
Familiar in the decisions has been the declaration that "If the farmer can improve his land by changing the water-course thereon which passes from his land to and upon lands of lower proprietors, without substantial injury to such lower proprietors, he may do so. To this extent he may increase the volume or velocity thereof by surface or under drainage. The lower proprietors have no right to complain, unless they can show material injury." Bailey v. Schnitzius, 53 N.J. Eq. 235 (E. & A. 1895); 56 Am. Jur. 559, 560. Cf. Smith v. Orben, supra. Did the defendants in the present case suffer any material injury? Here we have the somewhat indeterminate finding:
"We come, then, to defendants' claim for damages. There was no proof whatsoever on which the claim may be based; in fact, defendant made no attempt to prove the amount of damage claimed to have been suffered, though damage there undoubtedly was."
The component of the final judgment in this case that has primarily aroused our appellate interest is the denial of all remedial relief whatever to the plaintiffs and the absolute immunity bestowed upon the defendants from all responsibility for the erection of the impeding obstruction even to the normal beneficial enjoyment by the plaintiffs of their recognized easement.
It is in that particular that we believe that the learned trial judge slipped into the estuary of error. Our examination of the evidence and the adjudication guides us irresistibly to the impression that it was the court's invocation of the doctrine of unclean hands that deprived the plaintiffs of the equitable allowance of the relief to which they would otherwise normally be entitled.
*525 Were the acts of the plaintiffs in entering upon and enlarging the ditch on the defendants' land in the explanatory circumstances disclosed by the evidence so flagrantly unlawful, so maliciously antagonistic to the rights of the defendants, or so morally reprehensible as to deny them five years later any degree of protection in the use of their established easement? We think not.
Initially we note that the acts of the plaintiffs, if not performed with the acquiescence of the defendants, were certainly not arrogantly and insolently done in defiance of any contemporaneous protest of the defendants. Moreover the defendants in erecting the dams were not free of a parallelism of sin.
In balancing the acts of the respective parties, it does not seem to us that the considerations of fairness and natural justice in which the doctrine of unclean hands has its logical and flexible existence are gratified by requiring the plaintiffs to diminish the size of the ditch on their property to its former dimensions in 1948 and by permitting the defendants to maintain the dam or dams as they presently exist. Equity dispenses justice "in equal scale weighing both delight and dole."
The judgment under review is reversed. We do not, however, perceive any necessity for a retrial of this action. We shall exercise original jurisdiction pursuant to R.R. 1:5-4(a); 2:5 in an effort equitably to graduate and restore the easement of the plaintiffs and its user over the servient tenement of the defendants to the nature and extent of its prescriptive state in 1948. To effectuate that general purpose the plaintiffs are restrained from draining through the ditch by means of any artificial enlargement of it such an increased volume of water as thereby to cause any additional material injury to the lands of the defendants; the defendants are commanded forthwith to remove the dams artificially constructed by them on their property. It is recommended that counsel for the respective parties cooperate in the composition in more specific terms of both injunctive directions of the judgment to be entered.